## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRES SANCHEZ,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROL W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>   Defendant. | Civ. No. 15-5539 (KM)<br><br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Andres Sanchez brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB"). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

## I.   BACKGROUND

Sanchez seeks to reverse an ALJ's finding that he was not disabled from December 15, 2011, the alleged onset date, through February 6, 2014, the date of the ALJ's decision (R 29–37).

Sanchez applied for DIB benefits pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on August 9, 2012, alleging in his application a December 15, 2011 onset of disability (R 168–169).[1] His claim was denied initially on January 7, 2013 (R 91–95), and again on reconsideration on April 29, 2013 (R 96–98). Sanchez subsequently requested and received a hearing

---

[1]   Pages of the administrative record (ECF No. 6) are cited as "R _." Pages of the Plaintiff's Brief (ECF No. 9) are cited as "Pl Br _."

before an ALJ on November 26, 2013, at which Sanchez testified. (*See* R 38–63, 99–107, 111–129.)

ALJ Jack Russak issued a decision dated February 6, 2014, finding Sanchez "not disabled" (*see* R 29–37). On February 26, 2014, Sanchez filed a request for review of the ALJ's decision; the Appeals Council denied this request on June 11, 2015, thereby rendering the ALJ's decision the final decision of the Commissioner (*see* R 1–7). Sanchez now appeals that decision.

## II.   DISCUSSION

### A. Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Social Security Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); see *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

This Court conducts a plenary review of legal issues, including the ALJ's adherence to the five-step protocol outlined above. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedwomy v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

3

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny,* 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart,* 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

## B. The ALJ's Decision

ALJ Russak properly followed the five-step process. His conclusions are summarized as follows:

### Step 1

At step one, ALJ Russak found that Sanchez met the insured requirements of the SSA through December 31, 2016, and had not engaged in substantial gainful activity from the alleged onset date of December 15, 2011 (R 31).

### Step 2

At step two, the ALJ found that Sanchez had the following severe impairments: "lumbar spine spondylosis and left neural foraminal disc

herniation at the L4-5 level; and cervical spine spondylosis and osteophyte ridge complexes at the C5-6 and C6-7 levels" (R 31).

At this step, the ALJ rejected Sanchez's claim that he suffered from a severe mental impairment, finding that Sanchez's diagnosed adjustment disorder with depressed mood posed no more than a minimal limitation on Sanchez's ability to perform basic mental work activities (R 31). Substantial evidence in the record, which the ALJ thoroughly evaluated, supported this conclusion.

Specifically, ALJ Russak remarked on Sanchez's self-reported ability to manage money, go outside and travel independently, shop for and prepare food, do laundry, spend time with family, get along with authority, and follow instructions (R 32). The ALJ also discussed objective medical evidence from a psychiatric consultative examination showing that Sanchez could pay attention and concentrate with only mild memory impairment (*Id.*). Further the ALJ noted that Sanchez related well during his consultative examinations and hearing (*Id.*). Based on this evidence, the ALJ found "no more than 'mild'" limitation in the first three "paragraph B" functional area criteria for assessing mental impairment—daily living; social functioning; and concentration, persistence, or pace (R 31–32). *See* 20 C.F.R. § 404.1520a(c)(3). Consistent with the record, the ALJ also found no evidence that Sanchez had experienced episodes of decompensation—the fourth functional criterion (R 32).[2]

---

2      ALJ Russak explained that, with respect to Sanchez's mental impairment, his ensuing RFC assessment reflected the degree of limitation he found in the course of analyzing the "paragraph B" criteria (R 32). Although this statement alone might not satisfy the requirement that the ALJ "consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity," 20 C.F.R. § 404.1523, the ALJ did undertake a more comprehensive analysis of Sanchez's mental impairment in the course of determining Sanchez's RFC (*see* R 34 (discussing and assigning great weight to the opinion of Dr. Kim Arrington, Psy.D)). Therefore, I find that the ALJ discharged his responsibility with respect to considering Sanchez's non-severe mental impairment.

### Step 3

At step three, ALJ Russak determined that Mr. Sanchez's impairment or combination of impairments neither met nor medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R 32). He specifically and appropriately declined to find that Mr. Sanchez's impairments met the criteria for medical listing 1.04—Disorders of the Spine—because Mr. Sanchez had not put forth requisite evidence of "nerve root compression with limitation of motion of the spine, motor loss, and sensory of reflect loss; spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication and the inability to ambulate effectively." (R 32).

### Step 4 – RFC and Ability to Perform Past Work

Next, ALJ Russak defined Sanchez's RFC as follows:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and kneel; and never crawl.**

(R 33).[3]

Because Sanchez's arguments in this appeal focus primarily on the RFC, it is helpful to summarize the ALJ's evaluation of the record evidence that led to this finding.

---

[3]    The Social Security Administration defines "Medium work" as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c) and 416.967(c).

First, ALJ Russak recited Sanchez's allegations that he suffers from a disability due to a 2011 accident at work[4] and the following medical conditions: spinal disc bulges, numbness in hands and feet, and depression (R 33). The ALJ acknowledged Sanchez's testimony that he could lift only 15 to 20 pounds and had difficulty going up and down stairs, dressing himself, and getting in and out of the bathtub (R 33). The ALJ also noted Mr. Sanchez's testimony that he uses a cane he purchased himself; relies on his sister to complete household tasks and to tie his shoes; and can only walk one and a half blocks, stand for half an hour, and sit for two hours at a time (R 33).

ALJ Russak then discussed, and gave reasons for discounting as "not entirely credible," Sanchez's allegations regarding the "intensity, persistence and limiting effects" of his pain and limitations (R 33–35). This exercise involved a thorough comparison of Sanchez's medical records to the aforementioned subjective complaints. *Id.*

The ALJ first discussed evidence from a June 14, 2011 MRI and a June 17, 2011 physical examination revealing "multilevel spondylosis and left neural foraminal disc herniation at the L4-5 level, impinging on the L-4 exiting nerve root"; "spondylosis and osteophyte ridge complexes at the C5-6 and C6-7 levels"; "tenderness with palpation midline and in the left paraspinals, and decreased sensation over the plantar surface of both feet and medial aspects of ankles bilaterally." (R 33; *see* R. 301–304). The ALJ noted that these examinations also showed that Mr. Sanchez exhibited a normal gait, an ability to walk on his heels and toes, and no difficulty getting on and off the medical examining table. Sanchez had a full active range of motion but with some back pain, a negative straight leg raise test bilaterally, and equal motor strength bilaterally (R 34; *see* R. 301–304).

---

[4]     According to the record, Sanchez was injured at work on April 4, 2011 when he was hit by a "hi-lo" forklift (*see* R 328, 332).

Second, ALJ Russak considered the November 19, 2012 report of Dr. Alexander Hoffman on his physical examination of Sanchez. At the examination, Sanchez had some reduction in leg raising and reported some pain, but also reported that he only occasionally took over-the-counter ibuprofen for pain. According to the report, Sanchez had not recently undergone therapy for his conditions and was not using a cane or walker. Mr. Sanchez also reported living alone, showed a normal gait and intact deep tendon reflexes, demonstrated "excellent upper body grip strength," and an ability to bear weight on either leg, completed deep knee bending and a halfway squat, and showed 4/5 and 5/5 strength on the right and left sides of his body, respectively (R 34; *see* R 331–335).

Third, ALJ Russak considered the March 12, 2013 report of Dr. Morris Horwitz on an examination he performed to reopen Sanchez's Worker's Compensation claim (R 34; *see* R 340). The March 12, 2013 report, in which Dr. Horwitz concluded that Sanchez's disability had increased 12.5% since a November 22, 2011 exam,[5] reported a reduced range of motion, flexion, bending, twisting, and straight leg raising, but made no recommendations as to work or functional restrictions (R 34, 340–342).

Fourth, ALJ Russak considered the opinion of Dr. Kim Arrington, Psy.D. Following a December 12, 2012 psychiatric examination, Dr. Arrington opined that Mr. Sanchez could perform everyday functions independently, maintain a regular schedule as well as attention and concentration, and learn and complete new and complex tasks with only mild difficulty (R 34). The ALJ assigned "great weight" to Dr. Arrington's opinion by virtue of her specialization in her field and the lack of contradictory evidence in the record (*Id.*).

Fifth, the ALJ again gave "great weight" to the opinions of four non-examining state agency consultants—two medical (Drs. Shahinian and

---

5       Dr. Horwtiz's report indicated that Sanchez's Worker's Compensation settlement awarded "20% of partial total for the back, left chest/ribs and left lower leg/calf" on July 10, 2012 (R 340).

Galakos) and two psychiatric (Drs. Tillman and Bortner)—all of which found that Mr. Sanchez's impairments were not severe (R 34–35; *see* R 65–80). ALJ Russak explained that he afforded these opinions "great weight" because they were consistent with objective findings in the record and because they were provided by doctors who had examined the medical record (R 34–35).

The ALJ then discussed the incongruity between, on the one hand, Mr. Sanchez's self-reported limitations, and, on the other, the following evidence: Sanchez's discontinuation of physical therapy after 2011; his history of using only over-the-counter medication for pain with no history of injections or surgery; his failure to ever seek treatment for depression; a medical report showing no evidence of neurological or reflex deficits and little functional impairment; his failure to use a cane at his consultative examination and hearing, despite his claim that he needed it to walk; his self-reported ability to cook, clean, and walk independently, contradicting his testimony that he relies on his sister to perform all daily tasks; and his Worker's Compensation settlement for only twenty percent partial total loss (R 35). From this record, ALJ Russak found that, although Sanchez's impairments were real, his allegations of pain and limitation of his activities were "not fully credible" (R 35). Balancing the evidence, the ALJ determined that Sanchez's back pain limited him to the RFC stated above (R 35).

ALJ Russak then determined that Sanchez was "not disabled" on the ground that he could still perform his past relevant work (*see* R 35–37). To support this determination, the ALJ adopted the opinion of a vocational expert ("VE") who testified at the November 26, 2013 hearing on the nature of Sanchez's past relevant work as a cashier, warehouse worker, and recycling worker—all semi-skilled or unskilled positions—and on Sanchez's capacity to perform these positions in light of his RFC (R 35–36, 56–58). Adopting the VE's testimony, the ALJ specifically found that Sanchez was capable of holding employment as a warehouse worker (DOT code 922.687-058, requiring medium exertion), recycling worker (DOT code 928.687-022, requiring medium

exertion), and cashier (DOT code 211.462-014, requiring light exertion) (R 35, 56–57).[6]

### Step 5

ALJ Russak then proceeded to step five as an alternative ground for finding Sanchez not disabled. At this step, the ALJ again relied on the VE's testimony (R 36–37). Taking into account the ALJ's hypothetical question that incorporated Sanchez's RFC, the VE testified that Sanchez was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including representative occupations from light work[7] and medium work classifications (R 36–37). Specifically, the VE testified that Sanchez could work as a factory worker (DOT Code 706.684-022, "light work"), a laundry worker (DOT Code 361.684-014, "medium work"), and

---

[6]     The VE testified that Sanchez's limitations with the English language would prevent him from working as a cashier as the job is generally performed in the national economy (R 35, 57–58). The ALJ acknowledged this exclusion but still found Sanchez capable of working as a cashier as he had *actually* performed it in the past (R 35). This finding was appropriate; a claimant retains the capacity to perform his past relevant work if he can perform the demands of the job as he actually performed it or as ordinarily required by employers in the national economy. *See Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation as Generally Performed*, SSR 82-61 (S.S.A. 1982).

[7]     The Social Security Administration defines "Light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

10

a cleaner (DOT Code 301.474-010, "light work"), and that all of these jobs exist in large numbers nationally and regionally (*see* R. 36, 59–60).[8]

### C. Mr. Sanchez's Appeal and Analysis

Sanchez challenges the ALJ's determination that, albeit with the exceptions articulated in the RFC, Sanchez is capable of performing medium work (Pl Br 19–23). Sanchez also argues that the VE's testimony was not valid because it relied on hypotheticals that assumed Sanchez was capable of performing medium work (Pl Br 23–25). Because the RFC directly informed the hypothetical, the crux of both arguments is that the ALJ should not have incorporated "medium work" into Sanchez's RFC. I disagree.

### 1.      Ability to Perform Light Work

Sanchez's arguments fail at the outset because they dispute only the "medium work" component of the RFC—specifically, Sanchez's ability to carry up to fifty pounds. ALJ Russak denied Sanchez disability benefits not only because he is capable of performing past relevant or other unskilled *medium* work, but also because he is capable of performing past relevant or other unskilled *light* work. The ALJ specifically found that Sanchez could perform the duties of cashier as he actually performed them in the past, as well as the duties of factory worker or cleaner as generally performed in the national economy (*see* R 36–37).[9] Accordingly, even assuming *arguendo* that substantial evidence did not support the ALJ's RFC finding as to medium work, this error would be a harmless one; substantial evidence plainly supports Sanchez's

---

8       The VE also took into account Sanchez's advanced age, education, work experience, and RFC, as required (R 36, 59–61). *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

9       In a pre-hearing memorandum submitted to the ALJ, counsel for Sanchez argued that Sanchez "cannot perform *more than* light work," a seeming concession that he could perform light work. (R 295 (emphasis added)). The pre-hearing memorandum later concludes, inconsistently, that "Mr. Sanchez cannot perform a full range of light work." (R 295). But the evidence offered to support this conclusion is the same subjective evidence ALJ Russak evaluated and properly discredited in his RFC determination. (*Id.*)

capacity for light work and thus his ability to perform the three light work jobs identified.

### 2.    The "Medium Work" RFC

Nevertheless, for the reasons explained below, I find that substantial evidence does support the contested "medium work" RFC. Therefore, I also find that the hypothetical question posed to the VE accurately portrayed Sanchez's impairments and that it was proper for the ALJ to adopt the VE's testimony. Because, as stated above, any error as to medium work is harmless, I discuss it only briefly.

Sanchez first argues that ALJ Russak erred by not accounting for contradictory doctor's reports from two examinations at Concentra Medical Center ("Concentra"). Those reports, from June 3, 2011 and June 10, 2011, list symptoms and range of motion findings that are nearly identical, if not less severe, to those appearing in later reports from Concentra that the ALJ *did* expressly cite in his decision (*see* Pl Br 20–21; R 33–34, 301–330).

Sanchez directs my attention to a notation in the June 3, 2011 report advising Sanchez not to lift over forty pounds at work "until [the] next physician visit," scheduled for June 10, 2011 (R 305; *see* Pl Br 23). This temporary limitation until the next visit signifies little. A record from a June 17, 2011 Concentra visit (which the ALJ discusses, *see* R 33–34) reports that Sanchez was "tolerating his work restrictions" (R 302), and no mention of a forty-pound lifting limit ever again appears in any of Sanchez's follow-up records with Concentra, or anywhere else. As discussed above, subsequent examinations indicated Sanchez's intact strength, normal daily functioning, and general improvement in condition.[10]

---

[10]    Counsel for Sanchez also implies—although not in the argument section of Plaintiff's Brief—that the ALJ's RFC determination was incomplete because he failed to specify what weight he assigned to each of the opinions of Drs. Hoffman, Horwitz, Shahinian and Galakos (Pl Br 17). But a reviewing ALJ is not required to adhere to a particular format or to use particular language in evaluating the evidence. Rather, what is required is "sufficient development of the record and explanation of findings to

Second, Sanchez argues that the RFC finding is not supported by substantial evidence because no objective medical evidence affirmatively states that Sanchez is capable of lifting up to fifty pounds (Pl Br 23). Nevertheless, the objective medical evidence summarized above, on whole, constitutes substantial evidence supporting Sanchez's capacity for medium work regardless. The temporary forty-pound limitation (apparently abandoned) would actually tend to support Sanchez's capacity in February 2014 to lift *"no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83–10 (S.S.A. 1983) (emphasis added).[11]

Sanchez ascribes a third error to the ALJ with respect to the "medium work" RFC: he claims the ALJ failed to indicate or explain what weight he afforded Sanchez's own allegations that he cannot carry more than fifteen to twenty pounds (Pl Br 22–23).[12] Specifically, Sanchez maintains that the ALJ's

---

permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). And here, ALJ Russak *did* expressly assign "great weight" to the opinions of Drs. Shahinian and Galakos—medical consultants for the State—and explained that he assigned this weight because the doctors' opinions were "consistent with the objective findings in the record" (R 34–35). While brief, the ALJ's explanation is sufficient to permit meaningful review when considered in the context of the opinion as a whole; it sufficiently enables me to determine that the ALJ viewed Sanchez's medical record as consistent across physicians and over time and that he credited the opinions accordingly.

[11]    The Social Security Administration has also advised that "[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." SSR 83–10.

[12]    It bears repeating that the ALJ found that Sanchez is capable of actually performing or in the alternative, making a successful adjustment to light work occupations (R 36–37). Light work only requires lifting up to twenty pounds at a time. *See* n.7, *supra.* Therefore, Sanchez's self-reported inability to lift more than twenty pounds is not at odds with his performance of light work, and any error in the ALJ's findings as to Sanchez's capacity to lift up to fifty pounds would have no impact on the ultimate conclusion that Sanchez is not disabled.

partial discrediting of his allegations was improperly conclusory and vague (Pl Br 23).

A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible.[13] The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit his ability to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence . . . is a useful indicator." *Id.* But, the ALJ may also examine factors that precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

The ALJ's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Soc. Sec. Ruling 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016). What is required overall is that the

---

13    The Social Security Administration announced earlier this year that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." *Soc. Sec. Ruling 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016). As Judge Posner of the Court of Appeals for the Seventh Circuit recently explained, "the change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, No. 15-3883, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016).

ALJ give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done and substantial evidence supports the ALJ's "credibility" determination, a reviewing court will not disturb it. *See, e.g., Kanakis v. Comm'r of Soc. Sec.*, No. 15-3684, 2016 WL 2957225, at *3 (3d Cir. May 23, 2016) (not precedential).

ALJ Russak's decision clearly acknowledges Sanchez's claims that he could lift only fifteen to twenty pounds (R 33; *see* R 44). As summarized above, however, the decision also discusses repeated instances in the objective medical record in which examining physicians noted Sanchez's evidence of spinal injury, reduced sensation, and some range of motion limitations, but also remarked on Sanchez's independence, ability to walk normally and bear weight without assistance, his strength, minimal functional impairment, and ability to bend, flex, and mount and dismount the examining table without difficulty (R 34). The ALJ also noted inconsistencies in Sanchez's own descriptions of his pain and limitations.

Particularly because Sanchez's reported limitations suggested greater restriction than the objective medical evidence showed, it was appropriate for the ALJ to consider evidence of Sanchez's daily activities, duration of pain, medication, and treatment. *See* 20 C.F.R. § 404.1529(c)(3); *Dunson v. Comm'r Soc. Sec.*,615 F. App'x 65, 69 (3d Cir. 2015); *Ochs v. Comm'r Soc. Sec.*, 187 F. App'x 186,190–91 (3d Cir. 2006). ALJ Russak did just that; he considered the record evidence showing that Sanchez submitted to only minimal treatment in the form of physical therapy right after his injury and did not continue this treatment beyond 2011; that Sanchez had not undergone surgery or received injections and takes only over-the-counter pain medications; and that Sanchez's testimony claiming inability to walk at length and perform normal daily activities were contradicted by statements in his functional reports that he can stand for one hour and sit for two hours and that he cooks, launders, and walks independently (R 35; *see* R 43–45, 52–53, 267–273).

15

Moreover, ALJ Russak's presence at the hearing put him in the best position to observe Sanchez's demeanor and assess his assertions. For example, the ALJ properly took into account that Sanchez contradicted his own testimony that he uses a cane when he failed to bring it to his hearing. "The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence . . . is invaluable, and should not be discarded lightly." *Gonzalez v. Astrue*, No. 10-CV-2371 DMC, 2011 WL 4550148, at *11 (D.N.J. Sept. 29, 2011) (quoting *Arnold v. Schweiker*, 571 F. Supp. 526, 529 (E.D.Pa. 1983)).

In sum, I find that ALJ Russak found Sanchez's allegations concerning the severity and limiting effects of his symptoms "not entirely credible" (R.33) and "not fully credible" (R. 35) after a thoughtful and comprehensive review of the record.

### 3.   The ALJ's Hypothetical and VE's Testimony

Sanchez argues that because objective medical evidence controverts Sanchez's capacity to lift fifty pounds, the RFC determination was inaccurate insofar as it assigned Sanchez to medium work and therefore, the hypothetical question (which incorporated the RFC) did not accurately portray Sanchez's individual impairments. Sanchez argues this rendered the VE's testimony invalid (R 23–24).

While it is true that an ALJ only properly adopts a VE's testimony where it is based on hypothetical questions that accurately reflect the claimant's impairments, it is also true that the hypothetical questions need not incorporate every impairment a claimant alleges. *See Rutherford v. Barnhart*, 399 F.3d 546, 553–54 (3d Cir. 2005). "Instead . . . the hypotheticals posed must accurately portray the claimant's impairments and . . . the expert must be given an opportunity to evaluate those impairments as contained in the record." *Id.* at 554 (internal quotation marks omitted).

16

As I have already explained, substantial evidence supported the ALJ's RFC determination.[14] Therefore, the ALJ did not err in presenting a hypothetical question to the VE that incorporated the RFC. *See Plummer v. Apfel,* 186 F.3d 422, 431–32 (3d Cir. 1999). In any event, the VE identified light work that Sanchez could perform. I find that the ALJ's conclusion of non-disability was well supported by the testimony of the VE and other substantial evidence.

### III.  CONCLUSION

For the foregoing reasons, the ALJ's decision is AFFIRMED. An appropriate order accompanies this Opinion.

Dated:  September 16, 2016

_____
Hon. Kevin McNulty
**United States District Judge**

---

[14]    For this reason, the undeveloped argument that the ALJ's hypothetical also should have included Sanchez's decreased sensation in his feet and decreased muscle strength also fails (*see* Pl Br 24).